THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. GARY L. BLAIR, Defendant-Appellant.

Third District   No. 3—99—0925

Opinion filed April 24, 2001.

HOMER, P.J., specially concurring.

Kerry J. Sluis (argued), of State Appellate Defender's Office, of Ottawa, for appellant.

Gary L. Spencer, State's Attorney, of Morrison (John X. Breslin and Nancy Rink Carter (argued), both of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE SLATER delivered the opinion of the court:

After a stipulated bench trial, defendant, Gary L. Blair, was convicted of 16 counts of possessing child pornography (720 ILCS 5/11—20.1(a)(6) (West 1992)). On appeal, defendant contends the trial court erred by denying his motion to suppress. For the reasons that follow, we reverse defendant's convictions outright.

At the outset, we acknowledge that defendant raises other claims of error. However, in light of our disposition of defendant's claim concerning the denial of his motion to suppress, it is unnecessary for us to address the other issues he raises and we decline to do so.

On the afternoon of July 14, 1998, deputy sheriffs from the Rock Island County sheriff's department placed defendant under arrest for disorderly conduct in connection with his videotaping children at Niabi Zoo. Later that day, while defendant remained in custody, deputy sheriffs Steven Dean and Jeffrey Chrisholm traveled to defendant's residence in Whiteside County.

At the residence, they were greeted by Howard Blair, defendant's father. Dean and Chrisholm identified themselves as police officers, informed Blair about his son's arrest, and asked to come in to speak to Blair about his son. Once inside, Dean and Chrisholm asked if they might look at defendant's belongings. Blair gave permission but informed the officers that defendant's bedroom was locked and that he did not have a key to the room. Blair also noted that he lacked a key to certain lockers owned by defendant that were located in the basement.

The search eventually led to a small room in the basement where the officers came upon a computer. Blair informed the officers that the computer belonged to his son. At the hearing on defendant's motion to suppress, Blair testified that he had no ownership interest of any kind in his son's computer. Deputy Sheriff Chrisholm turned on the computer. Dean testified that it was his belief that Chrisholm asked Blair's permission to activate the computer. However, in their testimony, both Blair and Chrisholm denied that any such permission was requested or obtained.

At the suppression hearing, Chrisholm described his subsequent actions in the following manner:

"I *** went to the area where the internet was and I went to the tool bar on the top which showed favored bookmarks and I went down favored [bookmarks] and I clicked that area on. Upon clicking that area on I saw numerous references to teenagers and so forth which made me believe that there was [sic] some items in the computer which contained some types of child pornography."

Dean and Chrisholm then seized the computer. The elder Blair did not recall the officers asking permission to remove the computer, but he conceded that his memory of the event was not good. Dean, Chrisholm, and another police officer who had arrived on the scene all testified that Blair gave them permission to take the computer.

A subsequent search of the computer revealed the presence of 16 files capable of displaying a video or still image depicting either a lewd exhibition of a minor or a minor engaged in a sexual act. As a result, defendant was charged by information with 16 counts of possessing child pornography.

In denying defendant's motion to suppress, the trial court found that Howard Blair had given valid consent to search the common areas of the residence he shared with his son and that his general consent extended to permission to activate his son's computer and inspect its contents. The trial court also found that Blair had the requisite authority to consent to a seizure of the computer. After the trial court's ruling, defendant agreed to a stipulated bench trial but specifically reserved his right to appeal the denial of the motion to suppress.

■ Our federal and state constitutions guarantee the right to be free from unreasonable searches and seizures. U.S. Const., amends. IV, XIV; Ill. Const. 1970, art. I, § 6. A warrantless search or seizure is *per se* unreasonable unless it comes within one of a few recognized and limited exceptions. *Coolidge v. New Hampshire*, 403 U.S. 443, 29 L. Ed. 2d 564, 91 S. Ct. 2022 (1971). Moreover, in order to establish the validity of a warrantless search or seizure, the prosecution must prove

by a preponderance of the evidence that it falls within one of the exceptions to the warrant requirement. *Coolidge*, 403 U.S. 443, 29 L. Ed. 2d 564, 91 S. Ct. 2022.

While affording due deference to a trial court's findings of historical fact and reasonable inferences therefrom, this court reviews *de novo* the ultimate reasonableness of a warrantless search or seizure and, therefore, the applicability of exceptions to the warrant requirement. See *Ornelas v. United States*, 517 U.S. 690, 134 L. Ed. 2d 911, 116 S. Ct. 1657 (1996); *In re G.O.*, 191 Ill. 2d 37, 727 N.E.2d 1003 (2000) (following *Ornelas'* principles concerning standard of review). A trial court's findings of fact will not be reversed unless contrary to the manifest weight of the evidence. *G.O.*, 191 Ill. 2d 37, 727 N.E.2d 1003.

One exception to the warrant requirement obtains where a person possessing common authority over premises or effects voluntarily consents to a search. *United States v. Matlock*, 415 U.S. 164, 39 L. Ed. 2d 242, 94 S. Ct. 988 (1974). An item discovered during such a search may be seized if there is probable cause to believe the item is contraband or evidence of a crime and the incriminating character of the item is immediately apparent. *Horton v. California*, 496 U.S. 128, 110 L. Ed. 2d 112, 110 S. Ct. 2301 (1990).

In the case at bar, it is clear that defendant's father, Howard Blair, gave police valid consent to search the common areas of his home. Moreover, defendant does not contest Blair's authority to allow a search of the small basement room where defendant's computer was discovered. What defendant does dispute is whether police obtained valid consent to activate the computer and permit an inspection of the information stored there.

We find that this issue is ultimately irrelevant to the admissibility of the computer files. For, even assuming that Howard Blair gave valid consent to search his son's computer, the subsequent search failed to provide the police with probable cause to seize it.

■ In the absence of consent or a warrant, a police officer must have probable cause to effect a seizure. *Arizona v. Hicks*, 480 U.S. 321, 94 L. Ed. 2d 347, 107 S. Ct. 1149 (1987). A police officer has probable cause to seize an item where the facts available to the officer would justify a man of reasonable caution in the belief that the item may be contraband, stolen property, or evidence of a crime. *Texas v. Brown*, 460 U.S. 730, 75 L. Ed. 2d 502, 103 S. Ct. 1535 (1983).

■ Here, police discovered "bookmarks with references to teenagers and so forth." This discovery and the fact that defendant had been arrested for disorderly conduct would not warrant a person of reasonable caution to believe that the computer contained child pornography. At most, defendant's suspicious behavior at the zoo and the unquali-

fied references to teenagers constitute reasonable suspicion. Such ambiguous facts, however, do not rise to the level of probable cause. Thus, even assuming that the search of defendant's computer was lawful, the computer could not be seized absent valid consent to seize it.

We note that defendant has a conviction for child pornography predating his arrest in the instant case. However, there is no indication of record that Deputy Sheriffs Dean and Chrisholm were aware of this conviction at the time they seized defendant's computer. Accordingly, it adds nothing to the justification for the seizure.

■ Having determined that defendant's computer could not be seized absent valid consent, we turn to the validity of Howard Blair's consent to the seizure. Although Blair could not recall giving the police his consent, three police officers who were present at the scene testified that Blair did in fact give them permission to remove the computer. The trial court's express finding that Blair had the requisite authority to consent implies that the court found that Blair consented to the seizure. In view of the evidence adduced at the suppression hearing, we cannot say that this implicit finding of historical fact is against the manifest weight of the evidence.

However, this conclusion, by itself, does not resolve entirely the question of the validity of Blair's consent. We must still ascertain whether, in light of Blair's assertion that the computer belonged to his son, Blair had the authority to consent to its seizure.

■ A third party may consent to a search if he has common authority over, or other sufficient relationship to, the premises or effects to be searched. *Matlock*, 415 U.S. 164, 39 L. Ed. 2d 242, 94 S. Ct. 988. In the case at bar, however, we must decide, not whether a third party's common authority gives him the power to consent to a search, but whether that authority may permit government seizure of the property. This issue has received scant judicial attention. See *United States v. Woodrum*, 202 F.3d 1 (1st Cir. 2000) (third-party consent has been invoked only to validate warrantless searches of property, not seizures). Perhaps this is so because third-party consent is often superfluous where the incriminating character of an item is apparent, allowing it to be seized pursuant to the plain view doctrine without consent or a warrant. See, *e.g.*, *United States v. Smith*, 27 F. Supp. 2d 1111 (C.D. Ill. 1998) (police could seize computer pursuant to plain view doctrine where police discovered child pornography while conducting search authorized by third party); see also *State v. Ready*, 148 Or. App. 149, 939 P.2d 117 (1997) (police could seize videotapes labeled "kid porn" pursuant to plain view doctrine during valid third-party consent search). As noted previously, however, the police in the

instant case lacked probable cause to believe that defendant's computer contained contraband or was otherwise connected with a crime. Accordingly, the question of third-party consent to seize is foursquarely before this court.

In *Matlock*, the Supreme Court described common authority in the following manner:

> "Common authority is *** not to be implied from the mere property interest a third party has in the property. The authority which justifies the third-party consent does not rest upon the law of property, with its attendant historical and legal refinements, [citations] but rests rather on mutual use of the property by persons generally having joint access or control for most purposes, so that it is reasonable to recognize that any of the co-inhabitants has the right to permit the inspection in his own right and that the others have assumed the risk that one of their number might permit the common area to be searched." *Matlock*, 415 U.S. at 171 n.7, 39 L. Ed. 2d at 250 n.7, 94 S. Ct. at 993 n.7.

Thus, the rationale for third-party consent searches rests upon the notion that a person has a diminished expectation of privacy in premises or effects to which others have access or over which others have control.

■ Measuring a third party's authority to consent by a suspect's expectation of privacy is consistent with the idea that the fourth amendment's guarantee of freedom from unreasonable searches protects against unreasonable government intrusions upon privacy (*Katz v. United States*, 389 U.S. 347, 19 L. Ed. 2d 576, 88 S. Ct. 507 (1967)). Nevertheless, it should be remembered that the fourth amendment not only guarantees freedom from unreasonable searches, but freedom from unreasonable seizures. *United States v. Jacobsen*, 466 U.S. 109, 80 L. Ed. 2d 85, 104 S. Ct. 1652 (1984). This latter guarantee protects against unreasonable government interference, not with privacy alone, but with possessory interests in property. *Soldal v. Cook County*, 506 U.S. 56, 121 L. Ed. 2d 450, 113 S. Ct. 538 (1992). Moreover, the right to retain possession of property against unreasonable deprivation is not inferior to the right to maintain privacy. *Soldal*, 506 U.S. 56, 121 L. Ed. 2d 450, 113 S. Ct. 538.

The rationale for third-party consent searches resting, as it does, upon the diminished expectation of privacy attending a third party's common authority over the premises or effects to be searched does not provide a sufficient basis for a third party's consent to the seizure of another's personal effects. While one who permits a third party access or control over his property has a diminished expectation of privacy, the third party's access or control does not similarly diminish the owner's expectation that he will retain possession of his property.

■ A third party having common authority over premises or effects may permit a search of the premises or effects in his own right. *Matlock*, 415 U.S. 164, 39 L. Ed. 2d 242, 94 S. Ct. 988. In such a case, the third party is permitting others to do no more than the third party may do on his own, *i.e.*, inspect the premises or effects. However, a third party may not in his own right consent to depriving the owner of possession of his property. The third party could not in his own right lawfully exclude the owner from possession of the property. Accordingly, the third party cannot permit others to do what he himself has no right to do.

Therefore, we hold that the consent of a third party is ineffective to permit the government to seize property in which the third party has no actual or apparent ownership interest. Rather, a seizure is lawful only when the owner of the property consents to the seizure, there is a valid warrant for its seizure, or police are lawfully present and there is probable cause to believe the property is contraband, stolen property, or evidence of a crime.

We acknowledge that there are a handful of cases from other jurisdictions that express a contrary view. See *United States v. Woodrum*, 202 F.3d 1 (1st Cir. 2000); *United States v. Garces*, 133 F.3d 70 (D.C. Cir. 1998); *State v. Cotten*, 75 Wash. App. 669, 879 P.2d 971 (1994); *United States v. Falcon*, 766 F.2d 1469 (10th Cir. 1985). Of course, none of these cases is controlling. Moreover, we find them unpersuasive.

The decision in *Woodrum* deals with the peculiar issue of a third party's consent to the seizure of a person. *Woodrum*, 202 F.3d 1 (taxi cab owner could consent to stop of cab and, therefore, seizure of passenger). In *Garces* and *Falcon*, the courts reach the issue of third-party consent despite the applicability of the plain view exception and justify third-party consent seizures on the basis of the third party's common authority. *Garces*, 133 F.3d 70; *Falcon*, 766 F.2d 1469. For reasons already expressed, we are unpersuaded by this reasoning.

In *Cotten*, the court was squarely faced with the question before this court. *Cotten*, 75 Wash. App. 669, 879 P.2d 971. In concluding that a third party could give effective consent to seize another's property from premises over which the third party had common authority, the court relied upon the Supreme Court's decision in *Coolidge*, 403 U.S. 443, 29 L. Ed. 2d 564, 91 S. Ct. 2022. *Cotten*, 75 Wash. App. 669, 879 P.2d 971. We believe the Washington court misread *Coolidge*. The Supreme Court did not address the issue of third-party consent to seize in that case. In addition, the police in that case clearly had probable cause to believe that the property seized was evidence of a crime.

■ Accordingly, in light of our holding, Howard Blair's consent to

the warrantless seizure of his son's computer was ineffective. The trial court erred by denying defendant's motion to suppress. Defendant's convictions must be reversed. As the prosecution will be unable to proceed against defendant, defendant's cause will not be remanded. See *People v. Fulton*, 289 Ill. App. 3d 970, 683 N.E.2d 154 (1997).

As a final note, we caution that our holding concerning third-party consent to seize has only limited application. First, it is limited to situations in which there is no other applicable exception to the warrant requirement. As noted previously, police rarely need consent to seize an item discovered while conducting a lawful search because the plain view exception provides the necessary justification for the seizure.

Second, our holding only applies where there is, in fact, a "seizure," *i.e.*, a "meaningful interference with an individual's possessory interests in *** property" (*Jacobsen*, 466 U.S. at 113, 80 L. Ed. 2d at 94, 104 S. Ct. at 1656). In the instant case, it was clear that there had been such meaningful interference when the police removed defendant's computer from his residence.

Finally, our holding is limited to situations in which the party giving consent has no actual or apparent ownership interest in the property to be seized. We do not decide today what ownership interest a person must have in order to give effective consent for a seizure. Nor do we decide what indicia of ownership would justify the police in the belief that the consenting party has the requisite ownership interest to consent to a seizure.

For the foregoing reasons, the judgment of the circuit court of Whiteside County is reversed.

Reversed.

McDADE, J., concurs.

PRESIDING JUSTICE HOMER, specially concurring:

I agree with the majority's judgment reversing defendant's conviction due to police infringement of his constitutional rights. In my opinion, however, the fourth amendment was implicated the moment that Deputy Chisolm turned on the computer and clicked on the computer's "favored bookmarks," as he testified.

It has been held that the fourth amendment protection afforded to a person's closed computer files and computer hard drives is similar to the protection afforded a person's closed containers and closed personal effects. See *United States v. Barth*, 26 F. Supp. 2d 929, 936 (W.D. Texas 1998). By placing information in computer files, a person manifests a reasonable expectation of privacy in the contents of those files. *Barth*, 26 F. Supp. 2d at 936-37.

In the absence of valid consent, a warrant is ordinarily required to search the contents of a person's closed container. *People v. Bull*, 185 Ill. 2d 179, 705 N.E.2d 824 (1998). In order for the consent to be valid, the person from whom it is obtained must have either actual or apparent authority to give the consent. *Bull*, 185 Ill. 2d at 197-99, 705 N.E.2d at 833-34.

In this case, Deputy Chisolm activated the computer after learning from Howard Blair that the computer belonged to defendant. Accordingly, the officers could not have believed that Blair possessed the requisite authority to consent to its search. Without valid consent, this warrantless search of the computer and its contents was unlawful and any evidence subsequently obtained therefrom must be suppressed as fruit of the poisonous tree. See *Wong Sun v. United States*, 371 U.S. 471, 9 L. Ed. 2d 441, 83 S. Ct. 407 (1963).

Through this concurrence, I express no opinion about the conclusions drawn by the majority in its discussion of the ineffectiveness of Blair's consent to "seize" the computer. I simply believe that such analysis is unnecessary to the resolution of this appeal.